**NYCTL 2017-A v Olasov**

2024 NY Slip Op 33628(U)

October 9, 2024

Supreme Court, Kings County

Docket Number: Index No. 2679/19

Judge: Derefim B. Neckles

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part FRP 2 of the Supreme Court
of the State of New York, held in and for the
County of Kings, at the Courthouse, at Civic
Center, Brooklyn, New York, on the 9th day of
October, 2024.

PRESENT:

HON. DEREFIM B. NECKLES,

Justice.

----------------------------------------X

NYCTL 2017-A and THE BANK OF NEW YORK
MELLON as Collateral Agent and Custodian,

Plaintiffs,

- against -                                        Index No. 2679/19

DAVID OLASOV a/k/a DAVID M. OLASOV, SHARON
SPELLMAN a/k/a SHARON M. SPELLMAN a/k/a SHARON
M. SPELLMAN OLASOV a/k/a SHARON SPELLMAN
OLASOV a/k/a S. Spellman Olasov, NEW YORK STATE
DEPARTMENT OF TAXATION & FINANCE, THE UNITED
STATES OF AMERICA, "John Doe No. 1" through
"John Doe No. 100" inclusive, the names of the last
100 defendants being unknown to plaintiff, it being
Intended to designate fee owners, tenants or
Occupants of the tax lien premises and/or persons
Or parties having or claiming an interest in or a lien
Upon the subject property, if the aforesaid individual
Defendants are living, and if any or all of said
Individual defendants be dead, their heirs at law,
next of kin, distributes, executors, administrators,
trustees, committees, devisees, legatees, and the
assignees, lienors, creditors and successors in interest
of them, and generally all persons having or claiming
under, by, through, or against the said defendants
named as a class, of any right, title, or interest in or
lien upon the premises described in the complaint
herein,

Defendants.

----------------------------------------X

[* 1]

The following papers numbered 1 through 7 read herein:     Documents Numbered

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations)_____     1-3    4-5

Opposition Affidavits (Affirmations) _____     5     6-7

Reply Affidavits (Affirmations)____ _____     6-7____

Upon the foregoing papers in this tax lien foreclosure action regarding the residential property at 104 Buckingham Road in Brooklyn (Block 5096, Lot 19) (Property), plaintiffs NYCTL 2017-A Trust and The Bank of New York Mellon (BNY) as Collateral Agent and Custodian (collectively, Plaintiffs) move (in motion sequence [mot. seq.] one) for an order: (1) striking the answer of defendants David Olasov a/k/a David M. Olasov (David) and Sharon Spellman a/k/a Sharon M. Spellman a/k/a Sharon M. Spellman Olasov a/k/a Sharon Spellman Olasov a/k/a S. Spellman Olasov (Sharon) (collectively, the Olasov Defendants) and granting Plaintiffs summary judgment, pursuant to CPLR 3212; (2) granting Plaintiffs a default judgment as against the non-answering defendants, pursuant to CPLR 3215; (3) appointing a referee to ascertain and compute the amount due and owing to Plaintiffs, pursuant to RPAPL § 1321 (1); (4) amending the caption to substitute NYCTL 1998-2 Trust in place and instead of Plaintiff NYCTL 2017-A Trust, pursuant to CPLR 1018; and (5) severing and striking the John Doe defendants from the caption.

The Olasov Defendants cross-move (in mot. seq. two) for an order: (1) dismissing the complaint on the grounds that the lien upon which Plaintiffs rely was extinguished by redemption of the Property, or, alternatively, (2) staying the pending motions to permit the completion of discovery.

2

[* 2]

## Background

On July 12, 2019, Plaintiffs commenced this action against the Olasov Defendants and others to foreclose a 2017 tax lien by filing a summons, complaint and notice of pendency against the Property. The subject tax lien in the principal amount of $37,550.78 is evidenced by an August 10, 2017 tax lien certificate, which was allegedly recorded against the Property in the City Register's office on August 15, 2017 at CRFN 2017000303440 (2017 Tax Lien).

The record reflects that defendants the United States of America and the New York State Department of Taxation & Finance were served with process on July 24 and July 26, 2019, respectively. These defendants served notices of appearance and waived further service of motion papers.

On or about September 27, 2019, the Olasov Defendants, David and Sharon, collectively answered the complaint, denied knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and asserted that they:

> "deny that the Plaintiffs have any enforceable lien in the subject property and aver that at a date subsequent to the date of the alleged sale of the real property tax lien certificate alleged in the Complaint, *the defendants redeemed the property from existing tax liens, that these plaintiffs were parties in the prior tax lien foreclosure proceedings and redemption* and by their conduct and otherwise waived the right to be paid from said redemption and may not now proceed to seek foreclosure against these defendants' interest in the property" (Osalov answer at ¶ 1 [emphasis added]).

3

[* 3]

On or about March 6, 2020, the Olasov Defendants collectively served an amended answer, which is nearly identical to the original answer except it asserts two counterclaims for an award of the costs of defending this action, including attorneys' fees.

### *Plaintiffs' Summary Judgment Motion*

On February 17, 2023, more than three years after commencement, Plaintiffs moved for summary judgment, an order appointing a referee to compute the amount due and owing to them, a default judgment against the non-answering and non-appearing defendants (more than one year after their default) and to amend the caption.

Plaintiffs submit a fact affidavit from Kenneth LaVine (LaVine), a Senior Asset Manager and authorized signatory for MTAG Services, LLC (MTAG), the servicing agent and attorney-in-fact for Plaintiff's successor, the *NYCTL 1998-2 Trust*, and The Bank of New York Mellon as Collateral Agent and Custodian. LaVine, based on his review of MTAG's business records, including "payment records and interest computations of the tax lien that is the subject of this action," attests that:

> "[t]he NYCTL 1998-2 Trust is entitled to foreclose on the Tax Lien, pursuant to the Tax Lien Certificate and Sections 11-332 and 11-335 of the Administrative Cide of the City of New York . . . because the Defendants failed to pay the Tax Lien in full within one (1) year of the applicable Sale Date of the Tax Lien as set forth in the Tax Lien Certificate.
>
> "*MTAG's records show* that no payments have been made in account of the Tax Lien.
>
> "By reason of Defendants' failure to pay the Tax Lien in full, there is presently due and owing as of **May 20, 2022**, on the original Tax Lien principal balance of $37,550.78, the amount

4

[* 4]

> of **$50,206.07**, together with interest for each day thereafter as provided in the Tax Lien Certificate, as well as attorneys' fees for maintaining this action . . . Annexed hereto as **Exhibit 'E'** is a payoff quotation *I caused to be prepared from MTAG's records and computer systems* showing the amount due, *sans* legal attorneys' fees and costs" (LaVine moving affidavit at ¶¶ 12, 13 and 14 [emphasis added]).

Notably, MTAG's "records" reflecting Defendants' failure to pay the Property taxes, including MTAG's "payment records and interest computations" upon which LeVine's affidavit testimony and the "payoff quotation" are based, are not submitted to the court with LeVine's moving affidavit.

Plaintiffs submit an attorney affirmation asserting that Defendants' "defense" of redemption in their responsive pleading "is nonsensical and the Olasovs fail to explain how redeeming the Property from the foreclosure of the 2014 Tax Lien by paying the 2014 Tax Lien somehow invalidates or has any effect on the subject Tax Lien sold by the City in 2017 . . ." (Malone moving affirmation at ¶ 30). Plaintiffs' counsel asserts that "[t]he Olasovs do not dispute that the underlying taxes and assessments upon which this proceeding is based remain unpaid" and "nowhere is it alleged in the Olasovs' Amended Answer and Counterclaims that the delinquent taxes of the subject 2017 Tax Lien were ever paid" (*id.* at ¶ 32). Plaintiffs' counsel asserts that the Olasov Defendants' two counterclaims are subject to dismissal because they are "nonsensical" and lack merit (*id.* at ¶¶ 40 and 34).

Plaintiffs' counsel asserts that Plaintiffs are entitled to a default judgment against the non-answering defendants, despite the fact that they admittedly failed to seek a default

5

[* 5]

judgment against those party defendants within one year of their default, as required by

CPLR 3215 (c). Plaintiffs' counsel contends that "Plaintiffs were prevented from [timely

moving] due to various stays and moratoriums imposed as a result of the COVID-19

pandemic" and counsel's office was "negatively impacted by the COVID-19 Pandemic"

(*id.* at ¶ 48).

### *Defendants' Dismissal Cross-Motion*

On November 3, 2023, the Olasovs opposed Plaintiffs' summary judgment motion

and cross-moved to dismiss the complaint on the ground that the Property was previously

redeemed. Alternatively, Defendants seek a stay of the motion and cross-motion pending

the conclusion of discovery.

David submits an affidavit attesting that all tax liens recorded against the Property

were "extinguished by reason of defendants' exercise and full performance of their right

of redemption in a prior litigation involving the parties . . ." (David affidavit at ¶ 2). David

explains that:

> "[i]n a prior action entitled *NYCTL 1998-2 Trust and The Bank of New York Mellon, etc. v David Olasov, et al.* (Kings Cty. Supreme Ct. Index No. 505476/15) [2015 Foreclosure Action] plaintiffs were awarded a sale on foreclosure on the balance on tax liens owned by them. For the Court's convenience a copy of the judgment of foreclosure is attached as Exhibit A. . . .

> "Immediately prior to the published date of the auction sale, defendants were provided with the notice required by law of their right to redeem the property and extinguish the tax liens attached to the property. The notice specified the aggregate amount to be paid in order to effectuate the redemption. (Because of multiple office moves I have been unable to locate

6

[* 6]

a physical copy of the notice defendants were given.) However, *it is not in dispute that defendants timely tendered and BNY accepted the tendered amount. Defendants did all that the law required for a full redemption. . . .*

\*     \*     \*

*"Defendants initiated discovery to investigate BNY's* acquisition of the liens sued on herein and *its efforts to have these liens satisfied in the prior [2015] foreclosure action.* Because of the pandemic, plaintiffs made no response to the first requested discovery until January 31, 2023 of this year. It filed its motion for summary judgment promptly thereafter. . ." (*id.* at ¶¶ 3-4 and 7 [emphasis added]).

Alternatively, David asserts that "[i]f plaintiffs are successful in asserting that the redemption did not automatically result in the extinguishment of the liens asserted herein, then the pending motions should be stayed pending the completion of discovery under CPLR 3212 (f)" (*id.* at ¶ 7).

***Plaintiffs' Opposition and Reply***

Plaintiffs oppose Defendants' cross-motion and submit a reply affidavit from Matthew Nims (Nims), a Senior Asset Manager and authorized signatory for MTAG, in further support of their summary judgment motion. Regarding the 2015 Foreclosure Action, Nims admits that MTAG authorized the commencement of the 2015 Foreclosure Action based on Defendants' failure to pay *a 2014 tax lien* on the Property, after which a judgment of foreclosure and sale was granted on November 21, 2017 (Nims' opposition/ reply affidavit at ¶¶ 15 and 17). Nims attests that "[o]n the eve of [the] July 26, 2018 sale, Defendant David Olasov redeemed the 2014 Tax Lien by making a final payment of

7

[* 7]

$27,528.75" (*id.* at ¶ 19). Nims further attests that Defendant made a total payment of $74,506.54 towards and to redeem the 2014 Tax Lien by payment in full[,]" which is reflected in MTAG's Web LT computer system (*id.* at ¶ 20). Nims asserts that there is no merit to Defendants' argument that their redemption of the 2014 Tax Lien prevents Plaintiffs from foreclosing on the 2017 Tax Lien, "which is a separate and distinct tax lien" (*id.* at ¶ 22). Importantly, Nims opposition/reply affidavit includes copies of MTAG's business records from its Web LT computer system itemizing the outstanding amounts that are due under the 2017 Tax Lien, which substantiates the amounts due and owing under the 2017 Tax Lien (*id.* at ¶ 29 and Exhibit H).

### *Defendants' Reply Brief*

Defendants, in reply, submit only a memorandum of law vaguely arguing that "plaintiff unsuccessfully sought to make the redemption in the Prior [Foreclosure] Action contingent on payment of amounts claimed in this foreclosure action."

### Discussion

### *(1)*

### *Plaintiffs' Summary Judgment Motion*

Summary judgment is a drastic remedy that deprives a litigant of his or her day in court and should, thus, only be employed when there is no doubt as to the absence of triable issues of material fact (*Kolivas v Kirchoff*, 14 AD3d 493 [2d Dept 2005]; *see also Andre v Pomeroy*, 35 NY2d 361, 364 [1974]). "The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment, as a matter of law, tendering

8

[* 8]

sufficient evidence to demonstrate the absence of any material issues of fact" (*Manicone v City of New York*, 75 AD3d 535, 537 [2d Dept 2010], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *see also Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). If it is determined that the movant has made a prima facie showing of entitlement to summary judgment, "the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Garnham & Han Real Estate Brokers v Oppenheimer*, 148 AD2d 493 [2d Dept 1989]).

A plaintiff in a tax lien foreclosure action demonstrates its prima facie entitlement to judgment as a matter of law by submitting the subject tax lien certificate, which is presumptive evidence of a valid and enforceable lien, along with proof that no payments had been made on the tax lien (*NYCTL 2008-A Tr. v Livingston*, 175 AD3d 1542, 1543 [2d Dept 2019]; *see also NYCTL 2009-A Tr. v Morris*, 164 AD3d 1249, 1250 [2d Dept 2018] [holding that "plaintiffs demonstrated their prima facie entitlement to judgment as a matter of law by submitting the subject tax lien certificate, which was presumptive evidence of a valid and enforceable lien"]). "A plaintiff may establish a payment default by an admission made in response to a notice to admit (*see* CPLR 3212[b]; 3123), by an affidavit from a person having personal knowledge of the facts (CPLR 3212[b]), or by other evidence in admissible form" (*Bank of New York Mellon v Mannino*, 209 AD3d 707, 708 [2022] [internal citations omitted] [holding that plaintiff failed to establish defendant's payment

9

[* 9]

default by submitting an affidavit from its loan servicer based on the servicer's review of unspecified business records]).

Here, Plaintiffs have submitted the 2017 Tax Lien Certificate along with admissible evidence from MTAG's Web LT computer system evidencing that the 2017 Tax Lien has not been satisfied. In response to Defendants' contention that there has already been a full redemption of the Property in the 2015 Foreclosure Action, Plaintiffs have demonstrated that Defendants paid off the 2014 Tax Lien encumbering the Property, and not the 2017 Tax Lien, which is a separate and distinct lien. Based on the foregoing, Plaintiffs have established their prima facie right to foreclose on the 2017 Tax Lien, as a matter of law, and thus, they are entitled to an order of reference, which shall be settled on notice.

*(2)*

### *Plaintiffs' Motion for a Default Judgment*

Plaintiffs move for a default judgment against the non-answering defendants *more than two years after* they defaulted by failing to answer or otherwise respond to Plaintiffs' complaint. CPLR 3215 (c) provides that:

> "[i]f the plaintiff fails to take proceedings for the entry of judgment within one year after the default, the court shall not enter judgment but *shall dismiss the complaint as abandoned*, without costs, upon its own initiative or on motion, *unless sufficient cause is shown why the complaint should not be dismissed*" (emphasis added).

Where a plaintiff fails to seek leave to enter a default judgment within one year after a party's default, the plaintiff must show "sufficient cause," which requires the plaintiff to

10

[* 10]

demonstrate both a reasonable excuse for the delay and a meritorious cause of action (*Giglio v NTIMP, Inc.*, 86 AD3d 301, 308 [2d Dept 2011]; *First Nationwide Bank v Pretel*, 240 AD2d 629, 629 [2d Dept 1997]). The determination of whether an excuse is reasonable is within the sound discretion of the court (*see Deutsche Bank National Trust Co. v Bakarey*, 198 AD3d 718, 721 [2d Dept 2021]; *Deutsche Bank National Trust Co. v Charles*, 186 AD3d 454, 456 [2d Dept 2020]).

The Second Department has clarified that, if plaintiff fails to demonstrate a reasonable excuse for the delay and a meritorious cause of action, CPLR 3215 (c) explicitly provides that the complaint "shall" be dismissed, which is not discretionary, but mandatory (*Deutsche Bank National Trust Company v Watson*, 199 AD3d 879, 880 [2d Dept 2021]; *see* US *Bank National Assoc. v Davis*, 196 AD3d 530, 533 [2d Dept 2021]; *HSBC USA, National Assoc. v Grella*, 14 AD3d 669 [2d Dept 2016]). "The policy underlying the statute is 'to prevent parties who have asserted claims from unreasonably delaying the termination of actions, and to avoid inquests on stale claims'" (*Aurora Loan Servs., LLC v Hiyo*, 130 AD3d 763, 764 [2d Dept 2015] [quoting *Giglio*, 86 AD3d at 307]).

Here, Plaintiffs have demonstrated a reasonable excuse for their delay in seeking a default judgment against the non-answering defendants due to moratoriums and law office difficulties associated with the Covid-19 pandemic. Absent any opposition with respect to this branch of Plaintiffs' motion, this court grants Plaintiffs a default judgment as against the non-answering defendants in its discretion. Accordingly, it is hereby

11

[* 11]

**ORDERED** that Plaintiffs' motion (mot. seq. one) is only granted to the extent that: (1) their motion for summary judgment on their claim against the Olasov Defendants to foreclose on the 2017 Tax Lien encumbering the Property is granted; (2) the Olasov Defendants' counterclaims are hereby dismissed; (3) Plaintiffs are entitled to an order of reference, which shall be settled on notice within 30 days of service of this decision and order with notice of entry thereof; (4) Plaintiffs are granted a default judgment against the non-answering defendants New York State Department of Taxation & Finance and The United States of America; (5) the caption is hereby amended to eliminate the John Doe defendants and to substitute NYCTL 1998-2 Trust in place and instead of Plaintiff NYCTL 2017-A Trust, pursuant to CPLR 1018, without opposition; the motion is otherwise denied; and it is further

**ORDERED** that Defendants' cross-motion (mot. seq. two) is denied.

This constitutes the decision and order of the court.

E N T E R,

J. S. C.

HON. DEREFIM B. NECKLES
A.J.S.C.

12